**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
July 15, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
DEPUTY CLERK

| | |
|---|---|
| **VISTA HOLDINGS, LLC** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 7:24-cv-822 |
| | ) |
| **BSB DESIGN, INC.,** | ) |
| | ) |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **IMEG CONSULTANS CORP.,** | ) |
| | ) |
| Third-Party Defendant. | ) |

**MEMORANDUM OPINION**

In this contract action, Vista Holdings, LLC claims that BSB Design, Inc. breached its architectural contract regarding the design and placement of sanitary sewer lines in the construction of an apartment complex. Vista filed a motion for partial summary judgment or alternatively, a motion for judgment on the pleadings, seeking an early determination regarding the scope of the consequential damages waiver provision in its contract with BSB Design. Dkt. 29. Vista also contends that its damages claims for extended builders risk insurance, extended general conditions costs, MIP insurance, loan interest, loan extension penalties, and the lost rental value of structures, are direct damages, and not consequential damages, under Virginia law. Dkt. 28. Vista's motion is **GRANTED in part, and DENIED in part**.

## I. BACKGROUND

### a. Procedural History

Vista develops commercial real estate and in 2020 obtained financing from the Department of Housing and Urban Development to construct the Vue apartments in Blacksburg, Virginia. Vista contracted with BSB Design for architectural and design services on the project and separately contracted with Branch as the general contractor to construct the apartments according to BSB Design's architectural plans.

Vista asserts in its complaint that after BSB Design provided initial drawings for the project, the Town of Blacksburg required that Vista change the location of sanitary lines. Vista contends that BSB Design failed to give Vista and Branch updated plumbing drawings with the new location of sanitary lines. Branch installed the sanitary lines in the original (wrong) location and had to remove and reinstall the sanitary lines in the proper location which caused significant delays and additional costs to the project.

Vista brings a one count breach of contract action against BSB Design, seeking damages resulting from the delay, including costs and fees to extend its builders risk insurance policy, its mortgage insurance premium policy, and its HUD loans, the additional monthly interest on its HUD loans, and lost rental revenue. BSB Design filed an Answer and a Third-Party Complaint against its engineering consultant, IMEG Consultants Corp., which had contracted as a subconsultant with BSB Design for mechanical, electrical, plumbing, fire protection, structural engineering design and construction administration services. BSB Design asserts that any liability it may owe to Vista arises from IMEG's failure to perform under its subconsultant contract. BSB Design asserts several affirmative defenses in its Answer, including that the majority of Vista's damages are consequential damages, which are waived by contract.

b. **Undisputed Facts**

Vista and BSB Design entered into AIA Document B108-2009 for design and architectural services on the project on or about December 19, 2019 ("BSB Design agreement"). Dkt. 1-1. Section 8.1.3 contains a waiver of consequential damages,

> The Architect and Owner waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement. This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination of this Agreement, except as specifically provided in Section 9.7.

Dkt. 1-1, p. 13. Section 10.2 states, "[t]erms in this Agreement shall have the same meaning as those in AIA Document A201-2007, General Conditions of the Contract for Construction."[1] Dkt. 1-1, p. 15.

Vista and Branch entered into a construction contract on August 6, 2020 which incorporates General Conditions of the Contract for Construction, AIA Document A201-2017 ("Branch contract").[2] Dkt. 1-2. The Branch contract includes a General Provision on capitalization of terms:

> § 1.3 Capitalization
>
> Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles, or (3) the titles of other documents published by the American Institute of Architects.

Dkt. 1-2, p. 24. The Branch contract also includes a consequential damages waiver which states:

---

[1] The BSB Design agreement incorporates terms from form document "AIA Document A201-2007." The General Conditions of the Contract for Construction in the Branch construction contract incorporates AIA Document A201-2017. The parties agree that the applicable provisions and definitions of the A201-2007 and 2017 form versions are the same, including the definition of consequential damages. Any inconsistency in the version of AIA documents cited does not impact this analysis.

[2] The parties agree that BSB Design is not a party to the contract between Vista and Branch.

> § 15.1.7 Waiver of Claims for Consequential Damages
>
> The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes
>
> .1 damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and
>
> .2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.
>
> This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.7 shall be deemed to preclude assessment of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

Dkt. 1-2, p. 51.

**II.    STANDARD OF REVIEW**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Once the movant properly makes and supports a motion for summary judgment, the opposing party must show that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute of material fact exists, the Court views the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

On a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court applies the same standard when considering a Rule 12(b)(6) motion to dismiss. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Thus, to

survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In making this determination, the Court assumes that the allegations in the non-moving party's pleadings are true and construes all facts in the light most favorable to the non-moving party. *Id.* at 406.

"A motion for judgment on the pleadings should be granted when, accepting all facts pled by the nonmoving party as true and drawing all reasonable inferences from the facts in favor of the nonmoving party, the movant has clearly established that no material issue of fact remains, and that the movant is entitled to judgment as a matter of law." *Deutsche Bank Nat'l Trust Co. v. Fegely,* 767 F. App'x 582, 583 (4th Cir. 2019) (quoting *Schnuck Mkts., Inc. v. First Data Merch. Servs. Corp.*, 852 F.3d 732, 737 (8th Cir. 2017)).

III.   ANALYSIS

   a. **Consequential Damages Waiver**

Vista and BSB Design waived consequential damages under § 8.1.3 of the BSB Design agreement. Indeed, the parties agree that both the BSB Design agreement and the Branch contract are unambiguous, and that both contracts include consequential damages waivers. The parties disagree as to whether the consequential damages waiver provision in the BSB Design agreement stands alone, or whether it incorporates the broader consequential damages waiver in the Branch contract.

BSB Design and IMEG assert that the consequential damages waiver in § 10.2 of the General Conditions of the Contract for Construction of the Branch contract is a "term"

5

incorporated into the BSB Design agreement ("[t]erms in [the BSB Design] Agreement shall have the same meaning as those in [the Branch contract]").[3] Vista asserts that the waiver of consequential damages in the Branch contract is not a "term" and is therefore not incorporated into the BSB Design agreement. Vista argues that the BSB Design agreement consequential damages waiver stands alone and is construed under Virginia law.

Virginia "courts adhere to the 'plain meaning' rule in interpreting and enforcing a contract." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999). "If the contract 'is complete on its face' and 'plain and unambiguous in its terms,' we do not 'search for its meaning beyond the instrument itself.'" *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 631 (4th Cir. 2016) (citing *Hitachi*, 166 F.3d at 624). "Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc.*, 628 S.E.2d 539, 541 (Va. 2006) (quoting *D.C. McClain, Inc. v. Arlington Cnty.*, 452 S.E.2d 659, 662 (Va. 1995)). The cardinal rule of contract interpretation is that the intent of the parties as expressed in the contract controls. *Bender–Miller Co. v. Thomwood Farms, Inc.*, 179 S.E.2d 636, 639 (Va. 1971).

A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used. *Ross v. Craw*, 343 S.E.2d 312, 316 (Va. 1986). Furthermore, contracts must be considered as a whole "without giving emphasis to isolated terms." *American Spirit Ins. Co. v. Owens,* 541 S.E.2d 553, 555 (Va. 2001).

---

[3] For ease of reference, the General Conditions of the Contract for Construction, AIA Document A201-2017, that is incorporated into the Branch contract will be referred to generally in this analysis as "the Branch contract."

Section 10.2 of the BSB Design agreement states that "[t]erms in this Agreement shall have the same meaning as those in AIA Document 201-2007, General Conditions of the Contract for Construction." Vista argues that the word "Terms" in this provision necessarily refers only to defined, capitalized terms in the Branch contract. Defendants argue that § 10.2 is not limited to "defined" or "capitalized" terms, but rather incorporates the meaning of "terms" from the Branch contract generally, including provision § 15.1.7 waiving consequential damages. I find that under the plain language of the contracts, the consequential damages waiver provision is not a "term" in the Branch contract, and is not incorporated into the BSB Design agreement.

The plain and unambiguous language of the BSB Design agreement, read as a whole, reflects that § 10.2 adopts the meaning of defined, capitalized terms in the Branch contract which includes many words and phrases that are specifically defined in the contract and are capitalized every time they are used. Those words defined and capitalized in the Branch contract are likewise capitalized (but undefined) in the BSB Design agreement. Thus, the capitalization scheme of both contracts are complimentary to reflect a deliberate choice to capitalize certain defined terms every time they appear in the Branch contract, and likewise when they appear capitalized, but undefined, in the BSB Design agreement.  This structure reflects that the meaning of the terms capitalized and defined in the Branch contract are the same when capitalized, but undefined, in the BSB Design agreement.

Defendants' argument for a broader interpretation of the word "terms" is illogical when interpreting the contracts as a whole. If § 10.2 of the BSB Design agreement is not limited to adopting the meaning of defined terms from the Branch contract, there is no other category or indication of which meanings the BSB Design agreement intended to incorporate from the Branch contract.  If § 10.2 is read so broadly as to adopt all "terms" of the Branch contract,

7

without limitation on what constitutes a term, the provision would essentially incorporate the entire Branch contract and render superfluous any similar or competing provisions of the BSB Design agreement. Further, the parties would make express any intent to incorporate the meaning of all words and provisions of the Branch contract. But, they did not do so.

Construing § 10.2 of the BSB Design agreement to adopt the meaning of defined terms in the Branch contract makes clear that consequential damages do not fit into the category of a defined contractual term. First, the phrase "consequential damages" is not a contractual term. Rather, consequential damages are a legal concept comprised of different components, depending on the applicable jurisdiction. Section 15.1.7 of the Branch contract does not define consequential damages as a term, but instead explains the scope of the parties' waiver of consequential damages. Section 15.1.7 includes other contractual terms that are capitalized and defined in the contract, including "Contractor," "Owner," "Claims," "Contract," "Work," and "Contract Documents." The waiver of consequential damages itself is a legal provision, not a capitalized, defined term. Notably, § 10.2 adopts the meaning of "terms" and not "provisions," or "articles."

Further, the phrase "consequential damages" is not capitalized or defined in the Branch contract. The only capitalization of the phrase "consequential damages" in either contract is when it is used as a heading in the Branch contract of Article 15.1.7 "Waiver of Claims for Consequential Damages." The fact that the phrase consequential damages is capitalized as part of a heading does not transform it into a defined term.

Giving the unambiguous language of both contracts their plain meaning, the consequential damages waiver in the Branch contract is a legal provision and not a "term" whose meaning is incorporated into the BSB Design agreement. I conclude that there is no genuine

issue of material fact that the consequential damages waiver in § 15.1.7 of the Branch contract does not apply to the BSB Design agreement. Instead, the consequential damages waiver provision § 8.1.3 in the BSB Design agreement is its own stand-alone provision. I, therefore, grant partial summary judgment to Vista on this narrow issue of contractual interpretation.

### b. Direct or Consequential Damages

Vista also asks the Court to grant judgment on the pleadings as to BSB Design's affirmative defenses which allege that many of Vista's claimed damages are contractually waived consequential damages. Vista argues that it claims direct damages under Virginia law for 1) payment for extended builders risk insurance; 2) payment for its general conditions extension; 3) payment for mortgage insurance premium; 4) payment for additional loan interest; 5) payment for loan extension penalties; and 6) lost rent due to the delayed opening of the project.

There are two broad categories of contract damages: direct damages and consequential damages. *Washington & O.D. Ry. v. Westinghouse Elec. & Mfg. Co.,* 89 S.E. 131, 133 (Va. 1916). Direct damages flow "naturally" from a breach of contract; *i.e.,* those that, in the ordinary course of human experience, can be expected to result from the breach, and are compensable. *Roanoke Hospital Assoc. v. Doyle and Russell,* 214 S.E.2d 155, 160 (Va. 1975). Consequential damages arise from the intervention of "special circumstances" not ordinarily predictable and are compensable only if it is determined that the special circumstances were within the contemplation of the parties to the contract. *Id.*

Whether damages are direct or consequential is a question of law. This determination is not based upon the actual understanding and foreseeability of the parties in a particular situation, but rather, is an objective question of whether the damages "flow ordinarily and expectedly" from a breach of contract, are "ordinarily predictable" under construction industry standards, or

9

can be expected to result from a breach of contract in the ordinary course of human experience. *See Vienna Metro LLC v. Pulte Home Corp.*, 786 F.Supp.2d 1076, (E.D. Va. 2011); *Roanoke Hospital*, 214 S.E.2d at 160.

Although determining whether damages are direct or consequential is an objective analysis and an issue of law for the court to decide; it is a question of law that requires the court to understand certain facts about the case. The facts of a particular case inform whether the damages at issue are of the type that, in the ordinary course of human experience, or in the applicable industry, would be expected to result from a breach. Accordingly, the cases addressing the distinction between direct and consequential damages in the construction context do so after the benefit of factual development. *See Roanoke Hospital*, 214 S.E. at 160 (addressing direct versus consequential damages analysis after jury trial); *BAE Systems Ordnance Systems, Inc. v. Fluor Federal Solutions, LLC*, No.7:20cv587, 2022 WL 969773, at *9–10 (W.D. Va. March 30, 2022) (finding direct versus consequential damages analysis premature at motion to dismiss stage); *Banker Steel Co., LLC v. Hercules Bolt Co.*, No. 6:10CV00005, 2011 WL 1752224, at *7 (W.D. Va. May 6, 2011) (addressing direct versus consequential damages analysis at summary judgment stage); *Vienna Metro LLC v. Pulte Home Corp.*, 786 F.Supp.2d 1076, (E.D. Va. 2011) (addressing direct versus consequential damages analysis at summary judgment stage).

Here, Vista asks the Court to distinguish between the direct and consequential damages of its alleged breach of contract at an early stage when the parties have not yet conducted discovery and foundational questions remain, including Defendants' argument that the BSB Design agreement does not even apply to the alleged breach in this case. *See* BSB Design's Memorandum in Opp., Dkt. 31 (arguing that any allegedly deficient performance was governed

10

by a contract entered into prior to the BSB Design agreement, and that genuine issues of fact exist as to the applicable contract at issue).

Accordingly, this issue is premature and I decline to award summary judgment, or to rule on the pleadings, regarding whether categories of damages claimed by Vista are direct damages or consequential damages under Virginia law. Vista may renew its motion for summary judgment regarding consequential damages at the conclusion of discovery.

IV.     CONCLUSION

Vista's motion for partial summary judgment, or alternatively, motion for judgment on the pleadings, is granted in part and denied in part. A separate Order accompanies this Opinion.

Entered: July 15, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge